PROB 12C  
(06/17)

July 23, 2021  
pacts id:  4474883

# UNITED STATES DISTRICT COURT
# FOR THE
# SOUTHERN DISTRICT OF CALIFORNIA

## Petition for Warrant or Summons for Offender Under Supervision

**Name of Offender:** Larry Darnell Hickbottom (English)   **Dkt. No.:** 18CR00921-001-DMS

**Reg. No.:** 66767-298

**Name of Sentencing Judicial Officer:** The Honorable Dana M. Sabraw, Chief U.S. District Judge

**Original Offense:** 21 U.S.C. §§ 952, 960 and 963, Conspiracy to Distribute Heroin, a Class A Felony.

**Date of Sentence:** August 3, 2018

**Sentence:** 30 months' custody; 3 years' supervised release. *(Special Conditions: Refer to Judgment and Commitment Order.)*

**Type of Supervision:** Supervised Release     **Date Supervision Commenced:** April 30, 2020

**Asst. U.S. Atty.:** Brandon J. Kimura     **Defense Counsel:** John Lanahan  
(Appointed)  
619-237-5498

**Prior Violation History:** None.

## PETITIONING THE COURT

**TO ISSUE A NO-BAIL BENCH WARRANT**

The probation officer believes that the offender has violated the following condition(s) of supervision:

| **CONDITION(S)** | **ALLEGATION(S) OF NONCOMPLIANCE** |
|---|---|
| **(Mandatory Condition)**<br>Not commit another federal, state, or local crime. | 1. On or about June 9, 2021, Mr. Larry Darnell Hickbottom was in possession of fentanyl for sale, in violation of California Health and Safety Code § 11351, as evidenced by the police report filed by the Imperial County Narcotics Task Force, Report No. IC21-0124.<br><br>2. On or about June 9, 2021, Mr. Larry Darnell Hickbottom transported fentanyl for sale, in violation of California Health and Safety Code § 11352(a), as evidenced by the police report filed by the Imperial County Narcotics Task Force, Report No. IC21-0124.<br><br>3. On or about June 9, 2021, Mr. Larry Darnell Hickbottom conspired to transport fentanyl for sale, in violation of California Penal Code § 182, as evidenced by the police report filed by the Imperial County Narcotics Task Force, Report No. IC21-0124. |

***Grounds for Revocation:*** As to allegations 1 through 3, I have received and reviewed the Imperial County Narcotics Task Force (ICNTF) Report No. IC21-0124, which confirms the following: On June 9, 2021, at approximately 1710 hours, California Highway Patrol (CHP) K-9 Officer initiated a traffic stop on a Grey Dodge Charger for equipment violations. The driver of the vehicle was identified as Mr. Hickbottom. The officer observed Mr. Hickbottom was extremely nervous and visibly saw his carotid artery pulsating rapidly on the side of his neck. Mr. Hickbottom reported he did not have any paperwork for the vehicle as he recently purchased the Dodge several months prior. He was then directed out of the vehicle and instructed to go to the right front of the patrol vehicle. Upon inquiry, Mr. Hickbottom stated he was giving his friend (the passenger) a ride to Home Depot. The CHP officer noticed his address was in San Diego and inquired why they did not go to the Home Depot located in San Diego. Mr. Hickbottom did not remember the name of the passenger because he had just met her a few hours ago and he advised he picked up the passenger at the Tijuana border and brought her to the Imperial Valley so she could meet with her family. The passenger, later identified as Averil Beason, admitted to the officer the vehicle contained contraband. She handed the officers a blue pill that she had in her purse. Based on the officers' training and experience, they recognized the pill as a type of fentanyl. Mr. Hickbottom informed the officers he was on federal supervision for drug trafficking.

The officer advised Mr. Hickbottom a narcotic detention K9 would be conducting an exterior sniff of the vehicle and he noticed Mr. Hickbottom become very nervous. When asked if everything in the vehicle belonged to him, he replied that the right front passenger had property in the vehicle. He also noted he took the female passenger to the Dollar General Store, and she had purchased small bags. With regards to having drugs in the car, he replied "not that I know off." A narcotics detection K9 conducted an exterior sniff and when she reached the right front door, she showed a definitive and recognizable change of behavior and alerted to the right front door. The officers

Case 3:18-cr-00921-DMS   Document 45   Filed 07/23/21   PageID.143   Page 3 of 8

PROB12(C)
| | |
|---|---|
| Name of Offender: Larry Darnell Hickbottom | July 23, 2021 |
| Docket No.: 18CR00921-001-DMS | Page 3 |

subsequently found a small paper bag stuffed underneath the right front seat. The officer removed the bag and noticed it had gift wrapping paper inside. Inside the bag, officers found several plastic bags containing blue pills similar to what Ms. Beason had provided to them earlier. The officers estimated the plastic bags contained several thousand pills with "M30" branded on them. The offices recognized the pills to be fentanyl. Both Mr. Hickbottom and Ms. Beason were arrested and transported to the Law Enforcement Coordination Center (LECC).

The Imperial County Narcotics Task Force (ICNTF) subsequently took over the investigation. When questioned, Mr. Beason invoked her rights and declined to answer any questions. Mr. Hickbottom was advised of his Miranda rights, and he provided the following statements: he reported he resides in Tijuana at Calle Motozinpla Colonia Emperadores for about five months with his former girlfriend and her three children. Although the relationship is strained, he was trying to mend their relationship for the sake of the children. He hoped to be a good provider to his family, eventually marry his former girlfriend, and bring them to the United States.

Mr. Hickbottom admitted he was now going to be honest with the ICNTF agent. He reported he was working with two individuals who were involved in criminal activities. One of them knew he was unemployed, had car problems, and could not go to work for weeks. He was told that if he drove someone to El Centro, CA, he would be compensated and that someone else would call him using the WhatsApp for further instructions. The second individual who he referred to as P1 sent him a text using the WhatsApp and told him Ms. Beason and an unidentified male (named Wensley or Wesly) were already at the San Ysidro border waiting for him to pick them up. He was told by P1 that he would drive them, and Ms. Beason and the male would then deliver something, get money in return, and then he would drive them back. When he picked them up at San Ysidro, he had knowledge they had something illegal but did not know the content. He thought they were delivering "crystal" but said he was not confident. He was told he would be compensated $500 for his participation.

Mr. Hickbottom said P1 is a male subject, and the only form of communication with him is via WhatsApp. Mr. Hickbottom said the individual Ms. Beason was going to meet up with did not speak English; therefore, he was going to assist by translating. Mr. Hickbottom arrived at the San Ysidro border at approximately 1230 hours, Mr. Beason arrived at the border at 1300 hours, and the male subject arrived at the border soon after, by 1400 hours, they were enroute. Ms. Beason initially introduced herself, but Mr. Hickbottom did not recall her name. During their drive to Imperial County, Ms. Beason told him she was feeling discomfort because of the content inside her vagina. He drove Ms. Beason to the store, and she purchased a gift bag. She then walked to a nearby barbershop to use the bathroom and removed the items from her vagina and placed the contents inside the gift bag. They were then scheduled to meet the male subject at Denny's restaurant. They walked inside the restaurant and the male subject went to the restroom and removed his contents from his person and placed the contents inside the gift bag. Ms. Beason told Mr. Hickbottom the male had the contents inside his anus. Ms. Beason removed a pill from the bag and placed it inside a napkin and told him she was going to show the male the pill as proof. Mr. Hickbottom initially thought it was ecstasy but was not certain. Ms. Beason received a text indicating they were going to meet at Home Depot instead of Denny's to provide the content to the male subject.

Mr. Hickman reported that when he picked up the individuals from San Ysidro, he had knowledge that they had something illegal but did not know the content. He also acknowledged that they were supposed to receive $12,000 in payment for the content. Further, Ms. Beason told him she needed to return to the area today; however, he declined to drive her because he had obligations with his ex-girlfriend. More than one month ago, he received $200 in payment to pick up a box which he suspected contained cocaine from a friend named "Philip." He said a different subject later took possession of the box and took off. He further admitted to having transported undocumented individuals to the Los Angeles area on two or three occasions. He also admitted the other night, he was asked to pick up undocumented aliens at Otay Lakes; however, he declined due to the amount of border

patrol agents in the area. Mr. Hickbottom stated Ms. Beason works for some else but does not know them. Ms. Beason feared her boss and she would never share her boss' name.

Mr. Hickbottom signed a Consent to Search Form and allowed agents to review his cellular telephone. Due to COVID19 pandemic, both Mr. Hickbottom and Ms. Beason were subsequently given citations to appear in Imperial County Superior Court on July 12, 2021. However, since there was a delay in the submission of this police report, Mr. Hickbottom was instructed by the arresting ICNTF Agent to contact the court to find out when the next court hearing will be scheduled. It should be noted that although this offense occurred on or about June 9, 2021, the police report was not provided to our office until July 13, 2021.

On July 15, 2021, the Imperial County District Attorney's Office reported that no formal criminal charges have yet been filed against Mr. Hickbottom.

| (Standard Condition) | |
|---|---|
| If the defendant is arrested or questioned by a law enforcement officer, the defendant must notify the probation officer within 72 hours. | 4. Since on or about June 9, 2021, Mr. Larry Darnell Hickbottom failed to report to the probation officer, within 72 hours, that he was arrested and questioned by law enforcement officers. |

*Grounds for Revocation:*  As to allegation 4, on January 28, 2020, the conditions of supervised release were reviewed with Mr. Hickbottom and he acknowledged an understanding to the conditions by signing the Judgment and Commitment order. Since supervision commenced, Mr. Hickbottom was instructed by the probation officer to report all law enforcement contacts within 72 hours. To date, he has not reported the above-noted law enforcement contact, as directed.

## VIOLATION SENTENCING SUMMARY

### SUPERVISION ADJUSTMENT

On April 30, 2020, Mr. Hickbottom was released from custody for the underlying offense. On December 24, 2020, due to positive adjustment on supervision, his case was transferred to the Administrative Caseload. At that time, he was gainfully employed and had been approved to reside with his fiancé and her children in Mexico. As noted in the police report, at the time of his arrest for this new criminal conduct, he was unemployed. Given his alleged new law violations as indicated in this petition, his conduct is concerning and his overall adjustment to supervision is deemed unsatisfactory.

### OFFENDER PERSONAL HISTORY/CHARACTERISTICS

Mr. Hickbottom is a high school graduate. In 2009, he completed a certification in computer programming from UEI school in Chula Vista, CA. He completed the Residential Drug Abuse Program, (RDAP) program while he was incarcerated in the Bureau of Prisons (BOP). He participated in RDAP due to his history of alcohol abuse. Prior to his arrest for the underlying offense, he was abusing alcohol weekly and exhibiting "cognitive indolence" by ignoring his responsibilities and stressors by using alcohol. He would avoid his problems and drink rather than speaking with his fiancé and problem solve more effectively.

Mr. Hickbottom denied any current or recent mental health symptoms; however, approximately five years ago, he suffered suicidal ideations and has suffered, at times, with bouts of depression and anxiety.

Prior to this arrest for the underlying offense, Mr. Hickbottom did not have a criminal record.

Case 3:18-cr-00921-DMS   Document 45   Filed 07/23/21   PageID.145   Page 5 of 8

PROB12(C)

| | |
|---|---|
| Name of Offender: Larry Darnell Hickbottom | July 23, 2021 |
| Docket No.: 18CR00921-001-DMS | Page 5 |

## SENTENCING OPTIONS

### CUSTODY

**Statutory Provisions:** Upon the finding of a violation, the court may modify the conditions of supervision; extend the term (if less than the maximum authorized term was previously imposed); or revoke the term of supervised release. 18 U.S.C. § 3583(e)(2) and (3).

**Mandatory Revocation:** : If it is determined that the offender has violated the conditions of supervised release by being in possession of a controlled substance, the court is required to revoke supervised release and impose a sentence that includes a term of imprisonment. 18 U.S.C. § 3583(g)(1), and USSG §7B1.4, p.s., comment. (n.5)

If the court revokes supervised release, the maximum term of imprisonment upon revocation is 5 years. 18 U.S.C. § 3583(e)(3).

**USSG Provisions**: USSG §7B1.1(b), p.s., indicates that where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade. In this case the most serious conduct involves Possession of Sale of Controlled Substance which constitutes a Grade A violation. USSG §7B1.1(b), p.s.

Upon a finding of a Grade A violation the court shall revoke supervised release. USSG §7B1.3(a)(1), p.s.

A Grade A violation with a Criminal History Category I (determined at the time of sentencing) establishes an **imprisonment range of 24 to 30 months.** USSG § 7B1.4, p.s.

Since "the original sentence was the result of a downward departure…an upward departure may be warranted" upon revocation. The court can depart from the available imprisonment and impose a sentence of up to the statutory maximum of five years. USSG § 7B1.4, p.s., comment. (n.4), and 18 U.S.C. § 3583(e)(3).

Any term of imprisonment imposed upon revocation of supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the offender is serving, whether or not the sentence being served resulted from the conduct that is the basis of the revocation. USSG § 7B1.2(f), p.s.

### REIMPOSITION OF SUPERVISED RELEASE

If supervised release is revoked and the offender is required to serve a term of imprisonment, the court can reimpose supervised release upon release from custody. The length of such a term shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment imposed upon revocation. 18 U.S.C.§ 3583(h).

In this case, the court has the authority to reimpose a term of supervised release of any years up to life, less any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(k), and 21 U.S.C. §§ 841, 960.

### JUSTIFICATION FOR BENCH WARRANT

Mr. Hickbottom was arrested for a serious Grade A violation for criminal conduct of possessing and transporting fentanyl for sale, and he intentionally did not report this conduct to the probation officer. A little more than one month prior to his arrest for this incident, he admitted to officers that he participated in another drug trafficking offense. Furthermore, he admitted to transporting undocumented individuals on two to three prior occasions. He is viewed as a risk to the community and therefore, a no-bail bench warrant is requested.

PROB12(C)

| | |
|---|---|
| Name of Offender: Larry Darnell Hickbottom | July 23, 2021 |
| Docket No.: 18CR00921-001-DMS | Page 6 |

**RECOMMENDATION/JUSTIFICATION**

Mr. Hickbottom was arrested for a serious new criminal conduct of trafficking fentanyl which is a significant breach of the Court's trust. Only a little more than one month prior to his arrest for this new offense, he admitted to having participating in another cocaine trafficking incident and admitted to having transported undocumented individuals to the Los Angeles area on two or three occasions. The underlying offense also involved Mr. Hickbottom committing an equally serious offense of trafficking heroin and methamphetamine. This officer is very concerned by the pattern of his repeated participation in both drug and undocumented alien trafficking activities. It is evident he has blatantly disregarded his conditions of supervision to remain law-abiding.

Therefore, we are recommending that Mr. Hickbottom's supervision be revoked, and that he be sentenced to 24 months custody, followed by 36 months supervised release, with all the conditions of supervision previously ordered, with the exception of the previously imposed search condition and the inclusion of the updated search condition and that he participate in in Cognitive Behavioral Therapy, as indicated below. The Cognitive Behavioral Therapy is recommended so he can learn skills to help him not continue to make poor decisions. It is further recommended any custodial sanction imposed upon revocation, shall be ordered to run consecutive to any other imprisonment imposed as a result of the new criminal conduct.

- Submit your person, property, house, residence, vehicle, papers, [computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The offender must warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the offender has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

- Participate in a cognitive behavioral treatment program as directed by the probation officer, and if deemed necessary by the probation officer. Such program may include group sessions led by a counselor, or participation in a program administered by the probation office. May be required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on ability to pay.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on:** July 23, 2021

Respectfully submitted:
DANIEL J. KILGORE
CHIEF PROBATION OFFICER

Reviewed and approved:

by _/s/ Mimi Manzano_
Mimi Manzano
U.S. Probation Officer
(619) 557-5759

_/s/ Ynelda Valenzuela_
Ynelda E. Valenzuela
Supervisory U.S. Probation Officer

PROB12CW                                                                                                  July 23, 2021

# VIOLATION SENTENCING SUMMARY

1. **Defendant:** Larry Darnell Hickbottom

2. **Docket No.** (Year-Sequence-Defendant No.)**:** 18CR00921-001-DMS

3. **List Each Violation and Determine the Applicable Grade** (*See* USSG § 7B1.1)**:**

| Violation(s) | Grade |
|---|---|
| Possession of Sale of Fentanyl | A |
| Transportation of Fentanyl for Sale | B |
| Conspiracy to Transport Fentanyl for Sale | B |
| Failure to Report Law Enforcement Contact | C |

4. **Most Serious Grade of Violation** (*See* USSG § 7B1.1(b))                              [    A    ]
5. **Criminal History Category** (*See* USSG § 7B1.4(a))                                    [    I    ]
6. **Range of Imprisonment** (*See* USSG § 7B1.4(a))                           [ 24 to 30 months ]

7. **Unsatisfied Conditions of Original Sentence**:  List any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (*See* USSG § 7B1.3(d)):

| | | | |
|---|---|---|---|
| Restitution ($) | | Community Confinement | |
| Fine($) | | Home Detention | |
| Other | | Intermittent Confinement | |

PROB12(C)

| | |
|---|---|
| Name of Offender: Larry Darnell Hickbottom | July 23, 2021 |
| Docket No.: 18CR00921-001-DMS | Page 8 |

**THE COURT ORDERS:**

__X__  AGREE. A NO-BAIL BENCH WARRANT BE ISSUED BASED UPON A FINDING OF PROBABLE CAUSE TO BRING THE OFFENDER BEFORE THE COURT TO SHOW CAUSE WHY SUPERVISED RELEASE SHOULD NOT BE REVOKED FOR THE ALLEGED VIOLATIONS. THE PETITION AND THE WARRANT WILL BE SEALED UNTIL THE OFFENDER HAS BEEN ARRESTED ON THE WARRANT AND THEN THE PETITION AND WARRANT MAY BE UNSEALED. NOTWITHSTANDING THE SEALING, A COPY OF THE PETITION AND WARRANT WILL BE GIVEN TO THE U.S. MARSHAL FOR USE BY LAW ENFORCEMENT.

_____  DISAGREE. THE ISSUANCE OF A SUMMONS ORDERING THE OFFENDER TO APPEAR BEFORE THE COURT ON _____, AT _____, TO SHOW CAUSE WHY SUPERVISED RELEASE SHOULD NOT BE REVOKED.

_____  Other _____

_____  
The Honorable Dana M. Sabraw  
Chief U.S. District Judge

July 23, 2021  
Date

AH